Robert P. Goe – State Bar No. 137019
Ryan S. Riddles – State Bar No. 298745
**GOE FORSYTHE & HODGES LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
rgoe@goeforlaw.com
rriddles@goeforlaw.com

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

General Counsel for Richard A. Marshack,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>ALAIN AZOULAY,<br><br><br>Debtor. | Chapter 7 Proceeding<br><br>Case No. 8:19-bk-11550-TA<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER:**<br><br>**(1) APPROVING SALE OF REAL PROPERTY LOCATED AT 327 SALTA VERDE POINT, LONG BEACH, CA 90803;**<br>**(2) APPROVING SALE FREE AND CLEAR OF LIENS;**<br>**(3) APPROVING CARVE-OUT AGREEMENT;**<br>**(4) APPROVING PAYMENT OF AGENTS' COMMISSIONS;**<br>**(5) FINDING BUYERS ARE GOOD FAITH PURCHASERS; AND**<br>**(6) WAIVING THE 14-DAY STAY IMPOSED BY FRBP 6004(h)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD A. MARSHACK AND CLARENCE YOSHIKANE IN SUPPORT THEREOF**<br><br>Date:       December 17, 2019<br>Time:      11:00 a.m.<br>Ctrm:      5B |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** Richard A. Marshack ("Trustee"), the chapter 7 trustee for the bankruptcy estate of Alain Azoulay ("Debtor"), hereby brings this Motion for an Order: (1) Approving Sale of Real Property located at 327 Salta Verde Point, Long Beach, CA 90803 ("Property"); (2) Approving Sale Free and Clear of Liens; (3) Approving Carve-Out Agreement With Bank of America, N.A. ("BofA"); (4); Approving Payment of Agents' Commissions; (5) Finding Buyers Are Good Faith Purchasers; and (6) Waiving the 14-Day Stay Imposed By FRBP 6004(h) ("Motion").  As discussed herein, the Property is not Debtor's residence but rather a rental property and the first lien holder, Bank of America ("BofA"), which is under secured, has agreed to a short sale whereby, among other things, broker commissions will be paid and the estate shall receive $67,500 net for the estate (or 5% of the sale price).

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Richard A. Marshack (the "Marshack Declaration"), the Declaration of Clarence Yoshikane (the "Yoshikane Declaration"), all pleadings and papers on file in this matter, and such other and further oral and documentary evidence as the Court may considered at the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that any response to this Motion must be filed and served no later than 14 days prior to the hearing on this Motion.  *See* Local Bankruptcy Rule ("LBR") 9013-1(f).  Failure to timely file a response to this Motion may be deemed as consent to the relief requested by this Motion.  *See* LBR 9013-1(h).

Respectfully submitted,

Dated:  November 26, 2019

**GOE FORSYTHE & HODGES LLP**

By:  /s/Robert P. Goe_____
    Robert P. Goe
    Attorneys for Chapter 7 Trustee,
    Richard A. Marshack

**Statement of Information in Compliance with LBR 6004-1(c)(3)**

| | |
|---|---|
| *LBR 6004-1(c)(3)(A)*<br>The date, time, and place of the hearing on the proposed sale | December 17, 2019, at 11:00 a.m.<br>411 West Fourth Street, Courtroom 5B, Santa Ana, CA 92701 |
| *LBR 6004-1(c)(3)(B)*<br>The name and address of the proposed buyer | Oscar Mendoza, Elizabeth Loera, and Linda Mendoza<br>c/o Coldwell Banker Residential Brokerage/Clarence Yoshikane<br>840 Newport Center Drive, Suite 100, Newport Beach, CA 92660 |
| *LBR 6004-1(c)(3)(C)*<br>A description of the property to be sold | Single Family Residence located at 327 Salta Verde Point, Long Beach, CA 90803<br>(APN:7242-028-104) |
| *LBR 6004-1(c)(3)(D)*<br>The terms and conditions of the proposed sale, including the price and all contingencies | Price: $1,350,000<br>Property will be sold "as is" without representations or warranties of any kind, expressed or implied, concerning the condition of the Property, the quality of title thereto, or any other matters relating to the Property.<br>Sale is subject to overbidding during the sale hearing. |
| *LBR 6004-1(c)(3)(E)*<br>Whether the proposed sale is free and clear of liens, claims or interests, or subject to them, and a description of all such liens, claims, or interests | The Sale will be free and clear of all liens against the Property pursuant to 11 U.S.C. § 363(f). |
| *LBR 6004-1(c)(3)(F)*<br>Whether the proposed sale is subject to higher and better bids | The Sale is subject to overbidding during an auction to be held during the hearing on this Motion. The bidding procedures are described on pages 7-9 of the Motion. |
| *LBR 6004-1(c)(3)(G)*<br>The consideration to be received by the estate, including estimated commissions, fees, and other costs of sale | Trustee estimates the bankruptcy estate will receive approximately $67,500 (or 5% of the sale price) in net proceeds from the Sale. Agent (defined below), BKGRES (defined below), and any buyer's agent will share in a 5% commission as an 11 U.S.C. § 506 surcharge, as detailed below. |

| | |
|---|---|
| *LBR 6004-1(c)(3)(H)*<br>If authorization is sought to pay a commission, the identity of the auctioneer, broker, or sales agent and the amount or percentage of the proposed commission to be paid | The Court has previously approved Trustee's employment of Clarence Yoshikane with Coldwell Banker ("Agent") as his real estate agent. The Court has previously approved Trustee's employment of BK Global Real Estate Services ("BKGRES"). A real estate commission in an amount equal to a minimum of 5% of the sale price will be paid from the proceeds from the sale of the Property. Agent, BKGRES, and any agent for the buyer(s) will receive 1/3 of the 5% commission, which 5% commission will be paid by BofA as an 11 U.S.C. § 506 surcharge. |
| *LBR 6004-1(c)(3)(I)*<br>A description of the estimated or possible tax consequences to the estate, if known, and how any tax liability generated by the sale of the property will be paid | Trustee is not aware of any negative tax consequences to the estate. All outstanding and prorated property taxes, if any, will be paid through escrow. |
| *LBR 6004-1(c)(3)(J)*<br>The date which an objection must be filed and served | December 3, 2019. |

*///*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The basis for the relief requested are 11 U.S.C. §§ 363(b), (f), and (m), Federal Rules of Bankruptcy Procedure ("FRBP") 2002 and 6004.

### II.    BACKGROUND

4.    On April 25, 2019 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing the above-captioned case.

5.    Richard A. Marshack is the duly appointed, qualified, and acting chapter 7 trustee for Debtor's estate.

6.    In Debtor's Schedule A, he lists an ownership interest in the Property [APN: 7242-028-104].

### A.    The Property and Liens

7.    On April 22, 2006, Debtor signed a deed of trust ("DoT") creating a lien against the Property (defined below) in the original amount of $1,150,000 in favor of Bank of America, N.A. (the "BofA Lien").  On April 28, 2006, BofA recorded the DoT in the Los Angeles County Recorder's Office as instrument number 06-937210.  The current payoff balance to BofA is approximately $1,342,954.

8.    According to the Preliminary Title Report ("PTR"), the Property is also encumbered by homeowners association assessment liens in favor of the Spinnaker Bay Homeowners Association ("HOA").  A true and correct copy of the PTR is attached to the Marshack Declaration as **Exhibit "1"**.  The first of which was recorded on August 10, 2010, as instrument number 10-1108090 in the amount of $1,440; the second of which was recorded on May 29, 2012 as instrument number 12-790961 in the amount of $1,555.00 (collectively the "HOA Liens").  Further, the Property is encumbered by three judgment liens.  Specifically, the

1   judgment liens are in favor of Midland Funding, LLC in the amount of $8,893.10 (recorded on

2   June 29, 2012 as instrument number 12-972496), Paul W. Wylie as Trustee of the Urban Coyotes

3   Living Trust dated July 1, 2001 and Linton Family LLC, a Nevada limited liability company in the

4   amount of $6,281.90 (recorded on August 22, 2012 as instrument number 12-1249812), and Cach,

5   LLC in the amount of $3,092.40 (recorded on July 15, 2014 as instrument number 14-728764)

6   (collectively "Judgment Liens"), respectively.

7           **B.     Employment of Brokers**

8           On October 11, 2019, Trustee filed the Application to Employ (1) BKGRES and (2) Agent

9   as his real estate agent (the "Application") [Docket No. 46].  On November 1, 2019, the Court

10  entered an Order approving the Application [Docket No. 51].  A real estate commission in an

11  amount equal to a minimum of 5% of the sale price will be paid from the proceeds from the sale of

12  the Property.  Agent, BKGRES, and any agent for the buyer(s) will each receive 1/3 of the 5%

13  commission, which 5% commission will be paid by BofA as an 11 U.S.C. § 506 surcharge.

14          **C.     Marketing Efforts**

15          Agent has extensively marketed the Property. The Agent's marketing efforts have included

16  listing the Property on the CRMLS Matrix.  Yoshikane Declaration, ¶ 2.  Additionally, the Agent

17  has marketed the Property on the following online platforms: Coldwell Banker Residential

18  Brokerage website; Agent's website; Zillow.com; Trulia.com; Realtor.com; Facebook; Twitter;

19  and LinkedIn.  *Id*.  Finally, the Property has been actively marketed in the following print formats:

20  tract mailings; Agent's farm mailings; and Dream Homes magazine. *Id*.

21          The Agent's marketing efforts were successful.  Specifically, Trustee has received an offer

22  from Oscar Mendoza, Elizabeth Loera, and Linda Mendoza (collectively, "Buyers") for

23  $1,350,000.  A true and correct copy of the Residential Purchase Agreement and Joint Escrow

24  Instruction including addendums (collectively, "PSA") is attached to the Marshack Declaration as

25  **Exhibit "2"**.

26          **D.     Tenant on Property**

27          The Property is currently leased by Munir Ahmen ("Tenant").  To date, the Tenant has

28  been cooperative with the Trustee in his efforts to effectuate a sale of the Property, and Trustee is

advised that Buyers want Tenant to remain and post-closing a new rental agreement will be reached.

### E.    The Proposed Sale

The Trustee has determined that it is in the best interest of the estate and its creditors to proceed with the proposed sale of the Property to the Buyers for the sum of $1,350,000 (the "Sale"), subject to overbid, as described below.  Marshack Declaration, ¶ 12.

By this Motion, Trustee seeks approval to sell the Property, free and clear of liens, on substantially the terms and conditions set forth in the PSA, which reflects the material terms agreed to between Trustee and the Buyers.  The parties may agree on minor, non-material changes to the PSA prior to the hearing on the Motion.  A true and correct copy of the proposed closing statement and approved by Secured Creditor is attached to the Marshack Declaration as **Exhibit "3"**.

## III.    THE PROPOSED SALE AND BIDDING PROCEDURES

### A.    Terms of Sale

The Trustee seeks to sell the Property to Buyers, subject to overbidding pursuant to the bidding procedures herein, free and clear of the BofA Liens, HOA Liens, and Judgment Liens pursuant to 11 U.S.C. § 363(f)(1), (2), and (5).

The proposed terms of the Sale include the following:

1.    Subject to Court approval and overbid, the Trustee has accepted the Buyers' offer to purchase the Property for the sum of $1,350,000, free and clear of all liens, claims, and interests.  The Buyers made an initial deposit by certified check in the amount of $50,000, which is currently held in trust, pending Court approval of the Sale.  Marshack Declaration, ¶¶ 8-9.

2.    The proposed Sale shall be "as is," "where is," "with all faults," and without any warranties, and the transfer of the Property shall be by grant deed.

3.    The Sale is subject to overbidding pursuant to the bidding procedures described herein ("Bidding Procedures").  Any party wishing to make a bid to purchase the Property must comply with these Bidding Procedures.

4.      Potential overbidders must bid at least $10,000 greater than the Buyers' ("Original Bidder") original bid of $1,350,000 or $1,360,000.  Minimum bid increments thereafter shall be $1,000.   Trustee shall have sole discretion in determining which overbid is the best for the bankruptcy estate.

5.      Overbids must be in writing and received by the Trustee on or before **5:00 p.m. Pacific Standard Time on December 12, 2019**.  Overbids must be accompanied by a good faith deposit in the amount of $50,000 in certified funds.

6.      Overbidders must agree to purchase the Property on the terms and conditions set forth in the PSA or on terms no less favorable to the bankruptcy estate.

7.      Overbidders must provide evidence, reasonably acceptable to the Trustee, of the bidder's ability and financial wherewithal to fully and timely close the sale of the Property on the terms and conditions set forth in the PSA.

8.      All overbids must acknowledge that the Property is being sold on an "as-is" basis without warranties of any kind, expressed or implied, concerning the condition of the Property, the quality of title thereto, or any other matters relating to the Property.

9.      If any overbids are received, an auction will be conducted before the Court during the hearing on this Motion.  During the auction, the Trustee will accept the highest and best offer to purchase the Property in the exercise of his business judgment and subject to Court approval ("Successful Bidder" the amount the "Successful Bid") and designate the next highest and best offer to purchase the Property ("Back-Up Bidder").  Thereafter, Trustee will request a Court order that, among other things, approves the sale of the Property to the Successful Bidder.

10.     If a Successful Bid is accepted and confirmed by the Court, then the Successful Bidder is to reimburse the Original Bidder up to $2,000 for costs incurred.   Only physical inspection, termite inspection, and loan appraisal are reimbursable expenses.  Proof of monies spent and all inspection documents to be given to Trustee and Successful Bidder, if applicable.

11.     In the event that the Successful Bidder fails to close on the sale of the Property within the time parameters approved by the Court, then Trustee shall retain the Successful Bidder's good faith deposit, and Trustee shall be released from any obligation to sell the Property

1  to the Successful Bidder.  Trustee may then sell to Property to the Back-Up Bidder.

2        These Bidding Procedures will be provided to all creditors and any potential bidders or

3  parties that have shown an interest in the Property.  The Trustee believes that these Bidding

4  Procedures, along with Agent and BKGRES' thorough marketing, will ensure that the highest and

5  best price is received for the Property.

6        On the basis of the foregoing considerations, the Trustee believes that the proposed Sale is

7  fair and reasonable and will ensure that the estate realizes the highest possible sales price for the

8  Property.

9  **IV.    ARGUMENT**

10        By this Motion, Trustee seeks an Order: (1) Approving the Sale of the Property; (2)

11  Approving Sale Free and Clear of Liens; (3) Approving the Carve-Out; (4); Approving Payment

12  of Agents' Commissions; (5) Finding Buyers Are Good Faith Purchasers; and (6) Waiving the 14-

13  Day Stay Imposed By FRBP 6004(h).

14        **A.    <u>The Sale Should Be Free And Clear of All Liens</u>**

15        The Trustee seeks authority to complete the Sale free and clear of all liens, claims, and

16  interests.  Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear

17  of any interest in such property of an entity," if any one of the following five conditions is met:

18
19
20
21
22

> (1)    Applicable non-bankruptcy law permits a sale of such property free
>        and clear of such interest;
> (2)    Such entity consents;
> (3)    Such interest is a lien and the price at which such property is to be
>        sold is greater than the aggregate value of all liens on such property;
> (4)    Such interest is in bona fide dispute; or
> (5)    Such entity could be compelled, in a legal or equitable proceeding,
>        to accept money satisfaction of such interest.

23  11 U.S.C. § 363(f).

24        **i.  The HOA Liens and Judgment Liens**

25        The Sale free and clear should be approved as to the HOA Liens and Judgment Liens.

26  Section 363(f)(1) allows a sale to proceed, free and clear of liens, if the power to sell free and clear

27  exists outside of bankruptcy in another body of law.  The existence of this power is unquestionable

28  under both federal and state law.

1    It is well established that property can be sold free and clear of liens in a federal

2  receivership action.  *See, e.g.*, *First Nat'l Bank v. Shedd*, 121 U.S. 74, 87 (1887); *Randolph v.*

3  *Scranton, M. & B. R. Co.*, 4 F. Supp. 861, 863 (M.D. Pa. 1931) *aff'd Miners' Bank of Wilkes-*

4  *Barre v. Acker*, 66 F.2d 850 (3d Cir. 1933) ("It is clear that this court has the jurisdiction and

5  power to order such a sale."); *Broadway Tr. Co. v. Dill*, 17 F.2d 486 (3d Cir. 1927) ("The removal

6  of alleged liens or incumbrances upon property, the closing up of affairs of insolvent corporations,

7  and the administration and distribution of trust funds, are subjects over which courts of equity

8  have general jurisdiction.") (citation and internal quotations omitted); *see also John T. Callahan &*

9  *Sons, Inc. v. Dykeman Elec. Co.*, 266 F. Supp. 2d 208 (D. Mass. 2003).

10    In *Mellen v. Moline Malleable Iron Works*, the U.S. Supreme Court stated that "the

11  removal of alleged liens or encumbrances upon property, the closing up of affairs of insolvent

12  corporations, and the administration and distribution of trust funds, are subjects over which courts

13  of equity have general jurisdiction."  131 U.S. 352, 367 (1889).  It is also well settled that a

14  property can be sold free and clear of liens pursuant to California's judicial foreclosure laws.  Cal.

15  Code Civ. Proc., § 701.630.  Since the power to sell free and clear exists under external sources of

16  law, this power is vested in this Court under Section 363(f)(1).

17    The Sale should also be approved free and clear pursuant to Section 363(f)(5).

18  Specifically, a sale will be authorized if the lien holder could be compelled, in a legal or equitable

19  proceeding, to accept a money satisfaction of such interest.  *See In re Jolan, Inc.*, 403 B.R. 866

20  (Bankr. W.D. Wash. 2009).  Courts have held that Section 363(f)(5) applies whenever an interest

21  in the property to be sold is of a nature that such interest could be satisfied with money – as

22  opposed to specific performance being the only remedy.  *See, e.g., In re Trans World Airlines,*

23  *Inc.*, 322 F.3d 233, 290-91 (3d Cir. 2003) (because employees' claims were "subject to monetary

24  valuation," debtor's assets could be sold free and clear of successor liability for such claims under

25  § 363(f)(5)).

26    Here, the HOA and the holders of the Judgment Liens could be compelled to accept

27  payment for their respective debts in return for the release of their liens through either a federal

28  receivership proceeding, a California receivership proceeding, a hypothetical foreclosure sale by

1    one of the lienholders, or a cramdown.  Therefore, the Trustee seeks approve to sell the Property

2    free and clear of the HOA Liens and the Judgment Liens pursuant to 11 U.S.C. §§ 363(f)(1) and

3    (f)(5).

4        Further, in the absence of any objection, any claimed lienholder is deemed to have

5    consented to the proposed sale.  A lienholder's failure to object to a proposed sale free and clear

6    may be deemed consent.  *Yacoobian Enters., L.P. v. Canico Enters., LLC (In re Yacoobian Enters.*

7    *LP)*, Nos. 1:10-bk-19542-GM, 1:11-ap-01201-GM, 2012 Bankr. LEXIS 4062, at *6 (Bankr. C.D.

8    Cal. Sep. 4, 2012) ("[a] foreclosure sale is a sale of the property. Section 363(f)(2) can be

9    interpreted to mean that [a lienholder's] silence was consent to the sale."); *Futuresource L.L.C. v.*

10   *Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002); *Pelican Homestead v. Wooten (In re Gabel)*,

11   61 B.R. 661, 667 (Bankr. W.D. La 1985) (failure to object constitutes implied consent).

12                    **ii.  The BofA Lien**

13       The Trustee seeks an Order to complete the sale free and clear of all liens, claims, and

14   interests.  The BofA Lien will be paid pursuant to the Carve-Out (discussed below) (See <u>Exhibit</u>

15   <u>"3"</u>).  Further, BofA consents to the Sale, and the Trustee does not anticipate that any taxing

16   authorities will oppose this Motion.  Accordingly, the Trustee seeks an Order approving the sale of

17   the Property free and clear of the BofA Lien, HOA Liens, and the Judgment Liens pursuant to 11

18   U.S.C. §§ 363(f)(1), (2), and (5).

19           **B.    <u>The Carve-Out</u>**

20        "[T]he sale of a fully encumbered asset is generally prohibited."  *In re KVN Corp.*, 514

21   B.R. 1, 5 (9th Cir.  BAP 2014) (citations omitted).  Such a sale, however, may nevertheless be

22   justified through a negotiated carve-out agreement with the secured creditor.  *Id*. at 6.

23       In determining whether to approve a sale subject to a carve-out agreement, the trustee must

24   present evidence addressing the following questions: "Has the trustee fulfilled his or her basic

25   duties?  Is there a benefit to the estate; i.e. prospects for a meaningful distribution to unsecured

26   creditors?  Have the terms of the carve-out agreement been fully disclosed to the bankruptcy

27   court?"  *KVN Corp*, 514 B.R. at 8.  If the answer to these questions demonstrates that the estate

28   will be benefitted, then the proposed carve-out should be approved.  Here, the Property cannot be

1    sold absent approval of the Carve-Out and the proposed Carve-Out will provide substantial benefit

2    to the Estate.

3    　　　Here, in order to provide for the payment of expenses in this chapter 7 case and to afford

4    general unsecured creditors an opportunity to participate in any recovery from the sale of the

5    Property, BofA has agreed the Trustee will receive 5% (assuming the minimum bid is at least

6    $1,305,000) of the Successful Bid plus the Agent's Commission (the "Carve-Out").  BofA has

7    agreed to the Sale at$1,350,000 (See Exhibit "3").  The Trustee shall be provided additional

8    insurance by BofA to cover the Trustee and the estate from hazards during the sale process and up

9    through and including the closing of any sale.  The cost of the insurance shall be billed directly to

10   BofA, and the expense of the insurance shall not be paid by the estate but shall be paid by BofA.

11   　　　　　　　**i.    The Trustee Has Fulfilled His Basic Duties**

12   　　　The Trustee has a duty to administer the assets of the estate for the benefit of creditors.  11

13   U.S.C. § 704.  In negotiating and obtaining the proposed Carve-Out, the Trustee was able to obtain

14   BofA's agreement to carve-out at least $67,500 from the BofA Lien for the benefit of allowed

15   administrative and unsecured claims.  By obtaining BofA's agreement to the Carve-Out, the

16   Trustee has done all that is possible to ensure that a sale of the Property will benefit to the estate

17   and its creditors.

18   　　　　　　　**ii.    There Is A Benefit to The Estate**

19   　　　Benefit to the estate is typically measured by a "meaningful distribution to unsecured

20   claims."  *In re Scoggins*, 517 B.R. 206, 222 (Bankr. E.D. Cal. 2014).  For example, there is a

21   meaningful distribution to unsecured claims if the distribution to be made is greater than the

22   trustee's fees.  *Id.* at 223.

23   　　　Here, the Trustee estimates that his statutory fee for the sale of the Property would exceed

24   the amount of the proceeds generated through the Carve-Out.  However, the Trustee has agreed to

25   accept the Carve-Out and reduce his commission to ensure that the Sale benefits unsecured

26   creditors.   The attorney's fees incurred by the estate in negotiating and documenting the

27   Agreement and in seeking Court approval will be capped.  Consequently, the Agreement provides

28   a benefit to unsecured creditors.

### iii.    The Terms of the Carve-Out Have Been Fully Disclosed to The Court

The agreement between the Trustee and BofA concerning the Carve-Out has been fully disclosed above.  Therefore, the full terms of the Agreement have been fully disclosed to the Court.

### C.    The Property Should be Sold Pursuant to 11 U.S.C. § 363(b)

Section 363(b) of the Bankruptcy Code provides that after a notice and a hearing, a trustee may sell property of the estate outside the ordinary course of business.  11 U.S.C. §§ 363(b), 1107(a).  "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances.  The requirement of a notice and hearing operates to provide both a means of objecting and a method for attracting interest by potential purchasers."  *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005).

In determining whether to approve a proposed sale under § 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test.  3 Collier on Bankruptcy P 363.02[4] (16th 2019).  "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."  *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005).  The bankruptcy court reviews the trustee's business judgment only "to determine independently whether the judgment is a reasonable one.  The court should not substitute its judgment for the trustee's but should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms."  3 Collier on Bankruptcy P 363.02[4] (16th 2019).

A sound business justification for the Sale exists.  Absent the sale of the Property as described herein, the Debtor's unsecured creditors would not have an opportunity to participate in any recovery from the sale of the Property.

The Trustee is required to give notice of any sale of property of the estate.  *See* 11 U.S.C. § 363(b)(1).  Here, the Trustee will give notice to the Debtor, the United States Trustee, all known creditors, and any other prospective buyers.  Service of the Motion is proper and thereby constitutes adequate and reasonable notice.  Further, notice of the Sale and the Bidding Procedures

1  will be published on the U.S. Bankruptcy Court for the Central District of California's website.

2  Therefore, notice is proper.

3      The price for the Property is fair and reasonable.  The price is in line with the current

4  market price of comparable properties.  Yoshikane Declaration at ¶ 4. The Buyer's offer of

5  $1,350,000 is the highest and best offer for the Property that the Trustee has received to date.  *Id.*

6  The estate and its unsecured creditors will have an opportunity to participate in a potential

7  distribution as a result of the sale of the Property.  The proposed Bidding Procedures will ensure

8  that the estate realizes the highest possible sales price for the Property.  Accordingly, the price is

9  reasonable and in the best interest of the estate and its creditors.

10      "Good faith encompasses fair value, and further speaks to the integrity of the transaction."

11  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation

12  marks omitted).  Bad faith includes collusion between buyer and seller or otherwise taking unfair

13  advantage of other potential purchasers, such as a collusive insider transaction.  *Id.  See also In re*

14  *Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa.

15  1987).

16      Here, the sale was negotiated at arm's length and in good faith.  There is no indication of

17  fraud, collusion, or an insider transaction, and the Buyers have not received any special treatment

18  or consideration.  The Property has been actively marketed, the Bidding Procedures will be

19  properly noticed, and the Trustee has accepted the highest and best offer received to date, which

20  offer is subject to overbid at the hearing on the Motion.  Therefore, the Sale is made in good faith.

21      **D.**    **The Payment of Agent and BKGRES' Commissions Should be Authorized**

22      The Trustee requests that the Court authorize the payment of the real estate commission in

23  the amount of 5% of the purchase price of the Property to be paid by BofA as an 11 U.S.C. § 506

24  surcharge.  Specifically, Agent, BKGRES, and any agent for the buyer(s) will seek 1/3 of the 5%

25  commission.  The agreement approved by this Court's Order dated November 1, 2019 [Docket

26  No. 51] provides that the estate will not be liable, under any circumstances, to compensate Agent,

27  BKGRES, or any agent of the buyer(s).  Accordingly, the Trustee requests that the Court approve

28  payment of the real estate commission.

1    **E.    The Buyers Are Good Faith Purchasers**

2    The Buyers are good faith purchasers entitled to the protections under 11 U.S.C. § 363(m).

3    "Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts

4    generally have followed traditional equitable principles in holding that a good faith purchaser is

5    one who buys 'in good faith' and 'for value.'"    *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992)

6    (citing *In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143, 147 (3rd Cir. 1986)).    Lack of

7    good faith may be shown by "fraud, collusion between the purchaser and other bidders or the

8    trustee, or an attempt to take grossly unfair advantage of other bidders."    *In re Ewell*, 958 F.2d

9    276, 281 (9th Cir.  1992) (quoting *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); *see also In re*

10    *Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa.

11    1987) (the good faith requirement "focuses principally on the element of special treatment of the

12    debtor's insiders in the sale transaction").

13    Here, the proposed Sale is neither predicated on fraud nor collusion.  The Sale is not to an

14    insider.  Further, no insiders have received any special consideration or other treatment.  The

15    Property was extensively marketed, and the Buyers presented the Trustee with the highest and best

16    offer.   Accordingly, the Trustee requests that this Court find that the Buyers are good faith

17    purchasers entitled to the protections of 11 U.S.C. § 363(m).

18    **F.    The Court Should Waive the 14-Day Stay of FRBP 6004(h)**

19    Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property is stayed

20    until the expiration of 14 days after the entry of the order, unless the court otherwise orders.

21    Absent any objection to the Motion, Trustee requests that the 14-day stay provided for in

22    Bankruptcy Rule 6004(h) be waived.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

## V.    CONCLUSION

**WHEREFORE**, Trustee respectfully requests that the Court enter an Order:

1.  Granting the Motion in its entirety;

2.  Approving the Sale of the Property;

3.  Approving Sale Free and Clear of Liens;

4.  Approving Carve-Out;

5.  Approving the Agents' Commission;

6.  Finding Buyers Are Good Faith Purchasers Under 11 U.S.C. § 363(m); and

7.  Waiving the 14-day stay of FRBP 6004(h).

                                        Respectfully submitted,

Dated:  November 26, 2019              **GOE FORSYTHE & HODGES LLP**

                                        By:  /s/Robert P. Goe
                                              Robert P. Goe
                                              Attorneys for Chapter 7 Trustee,
                                              Richard A. Marshack

## DECLARATION OF RICHARD A. MARSHACK

I, Richard A. Marshack, declare and state that I am the duly appointed and acting chapter 7 trustee for the bankruptcy estate of Alain Azoulay ("Debtor"). Unless otherwise stated, I have personal knowledge of the facts set forth herein. I am over 18 years of age, and if called to testify, then I would honestly and competently testify hereto. I make this declaration in support of this Motion. Unless otherwise stated, defined terms are as set forth in this Motion.

1.    On April 25, 2019 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No. 8:19-bk-11550-TA.

2.    I am the duly appointed, qualified, and acting chapter 7 Trustee for Debtor's estate.

3.    On April 22, 2006, Debtor signed a deed of trust ("DoT") creating a lien against the Property (defined below) in the original amount of $1,150,000 in favor of Bank of America, N.A. ("Lien").   On April 28, 2006, Bank of America, N.A. ("BofA") recorded the DoT in the Los Angeles County Recorder's Office as instrument number 06-937210.

4.    In Debtor's Schedule A, he listed an ownership interest in the property located at 327 Salta Verde Point, Long Beach, CA 90803 [APN: 7242-028-104] (the "Property").

5.    According to the Preliminary Title Report ("PTR"), the Property is also encumbered by homeowners association assessment liens in favor of Spinnaker Homeowners Association ("HOA").  The first of which was recorded on August 10, 2010, as instrument number 10-1108090 in the amount of $1,440; the second of which was recorded on May 29, 2012 as instrument number 12-790961 in the amount of $1,555.00 (collectively the "HOA Liens"). Further, the Property (defined below) is encumbered by three judgment liens.  Specifically, the judgment liens are in favor of Midland Funding, LLC in the amount of $8,893.10 (recorded on June 29, 2012 as instrument number 12-972496), Paul W. Wylie as Trustee of the Urban Coyotes Living Trust dated July 1, 2001 and Linton Family LLC, a Nevada limited liability company in the amount of $6,281.90 (recorded on August 22, 2012 as instrument number 12-1249812), and Cach, LLC in the amount of $3,092.40 (recorded on July 15, 2014 as instrument number 14-728764) (collectively "Judgment Liens"), respectively.  A true and correct copy of the PTR is attached hereto as **Exhibit "1"**.

6.      The Property is currently leased by Munir Ahmen ("Tenant").  To date, the Tenant has been cooperative with my efforts to effectuate a sale of the Property.

7.      On October 11, 2019, I filed the Application to Employ (1) BK Global Real Estate Services ("BKGRES") and (2) Clarence Yoshikane with Coldwell Banker ("Agent") as my real estate agent (the "Application") [Docket No. 46].  On November 1, 2019, the Court entered an order approving the Application [Docket No. 51].   Agent, BKGRES, and any agent for the buyer(s) will each seek 1/3 of the 5% commission as approved by the Court's November 1, 2019 Order.

8.      The Buyers offered to purchase the Property for the sum of $1,350,000 (the "Sale"), free and clear of all liens, claims, and interests.  A true and correct copy of the Residential Purchase Agreement and Joint Escrow Instructions and all addenda is attached hereto as **Exhibit "2"**.

9.      The Buyers have made an initial deposit by certified check in the amount of $50,000 (the "Deposit"), which is currently held in trust, pending Court approval of the Sale.  The Deposit is only refundable only if Buyers are not the Successful Bidder at the Online Auction.

10.     I am informed that there will be no adverse tax consequences to the estate.

11.     I estimate that the bankruptcy estate will receive approximately $67,500 in net proceeds from the sale of the Property.  Agent, BKGRES, and any agent for the buyer(s) will receive their share of the 5% commission to be paid by BofA.  I estimate that the other costs of sale (escrow, title, and incidental costs) will be approximately 2% of the total sales price.  A true and correct copy of the proposed Closing Statement is attached hereto as **Exhibit "3"**.

12.     I believe that it is in the best interest of the estate and its creditors to proceed with the proposed sale of the Property to Buyers for the sum of $1,350,000, subject to overbid at the hearing on the Motion.

13.     I entered into the Carve-Out with BofA which provides the estate will receive 5% assuming the minimum bid is at least $1,305,000 of the Successful Bid plus the Agent's Commission (the "Carve-Out").  I shall be provided additional hazard insurance by BofA to cover myself and the estate from liability during the sale process and up through and including the

closing of any sale.  The cost of the insurance shall be billed directly to BofA, and the expense of the insurance shall not be paid by the estate but shall be paid by BofA.

14.    I believe that the Sale, subject to overbid at the hearing on this Motion, will ensure that the highest possible price for the Property is realized for the estate and its creditors.

15.    In my business judgment, I submit that the Sale, subject to overbid, is fair and reasonable.

16.    The Sale was negotiated at arms-length and in good faith.  Further, there is no indication of fraud, collusion, or an insider transaction, and the Buyers have not received any special treatment or consideration.

I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this _25_ day of November 2019 at _La Quinta_, California.

By: _____

Richard A. Marshack, Chapter 7 Trustee

19

## <u>DECLARATION OF CLARENCE YOSHIKANE</u>

I, Clarence Yoshikane, am a real estate manager and broker employed by Coldwell Banker in Newport Beach, California, the Court-approved real estate agent for Richard A. Marshack ("Trustee"), the chapter 7 trustee for the bankruptcy estate of Alaine Azoulay ("Debtor"). Unless otherwise stated, I have personal knowledge of the facts set forth herein. I am over 18 years of age, and if called to testify, then I would honestly and competently testify hereto. I make this declaration in support of this Motion. Unless otherwise stated, defined terms are as set forth in this Motion.

1.    I have made at least eight phone calls to potential purchasers of the Property. I have shown the Property six times, and I have taken two buyer's calls.

2.    I have extensively marketed the Property. Specifically, the Property has been listed on the CRMLS Matrix and on following online platforms: Coldwell Banker Residential Brokerage website; Agent's website; Zillow.com; Trulia.com; Realtor.com; Facebook; Twitter; and LinkedIn. Additionally, the Property has been actively marketed in the following print formats: tract mailings; farm mailings; and Dream Homes magazine.

3.    As a result of the above efforts, Trustee received an offer from the Buyers to purchase the Property for $1,350,000.

4.    The Buyers' offer is the highest and best offer received to date, and I believe that it represents fair market value and should be approved subject to overbidding.

I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of November 2019 at Santa ___ California.

By: _____
     Clarence Yoshikane

**Scanned with CamScanner**

# EXHIBIT 1

# EXHIBIT 1

**CLTA Preliminary Report Form**                    Order Number:  O-SA-5961164
(Rev. 11/06)                                         Page Number:  1



# First American Title Company

**4 First American Way**
**Santa Ana, CA 92707**
California Department of Insurance License No. 151

| | |
|---|---|
| Order Number: | O-SA-5961164 (dt) |
| Title Officer: | Debbie Tognetti |
| Phone: | (714)250-8579 |
| Fax No.: | (714)481-2956 |
| E-Mail: | FAHQ-RA-octitle3@firstam.com |
| Owner: | Alain E. Azoulay |
| Property: | 327 Salta Verde Point |
| | Long Beach, CA 90803 |

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Order Number: **O-SA-5961164**
Page Number:  2

Dated as of May 28, 2019 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

  Alain Elie Azoulay, A Single Man

The estate or interest in the land hereinafter described or referred to covered by this Report is:

  A FEE AS TO PARCEL(S) 1, AN EASEMENT AS TO PARCEL(S) 2, 3 AND 4

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.    General and special taxes and assessments for the fiscal year 2019-2020, a lien not yet due or payable.

2.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

3.    Any easements or servitudes appearing in the public records.
      Affects:        Common Area.

4.    The terms and provisions contained in the document entitled "MCGRATH-MACCO BOUNDARY SETTLEMENT AND EXCHANGE AGREEMENT" recorded April 13, 1971 as INSTRUMENT NO. 18 OF OFFICIAL RECORDS.

5.    The terms and provisions contained in the document entitled "MCGRATH-MACCO BOUNDARY SETTLEMENT AND EXCHANGE AGREEMENT" recorded December 14, 1970 as INSTRUMENT NO. 210, BOOK M-3634, PAGE 399 OF OFFICIAL RECORDS.

Order Number: **O-SA-5961164**
Page Number:  3

Document(s) declaring modifications thereof recorded December 14, 1970 as INSTRUMENT NO. 211, BOOK M-3634, PAGE 526; APRIL 3, 1973 AS INSTRUMENT NO. 3386, BOOK M-4337, PAGE 57 AND MARCH 9, 1988 AS INSTRUMENT NO. 88-322699, ALL of Official Records.

6.    NON-EXCLUSIVE DRILL-THROUGH RIGHTS FOR WELL BORE PURPOSES, LOCATED AT A DEPTH OF 500 FEET, OR MORE, BELOW THE PRESENT NATURAL SURFACE OF THE GROUND AS SHOWN ON EXHIBITS "A" AND "B" ATTACHED TO THE HEREIN REFERENCED MCGRATH-MACCO BOUNDARY SETTLEMENT AND EXCHANGE AGREEMENT, AND AS AMENDED.

SAID NON-EXCLUSIVE RIGHT SHALL BE ONLY FOR THE MAINTENANCE OF WELL BORES, CASINGS, TUBING AND OTHER FACILITIES INSTALLED THEREIN OF WELLS DRILLED FROM DRILL SITES FOR PURPOSES OF PRODUCING OIL OR GAS OR OTHER HYDROCARBONS OR FOR PURPOSES OF WATER INJECTION AS A PART OF SECONDARY RECOVERY OF OIL OR GAS OR OTHER HYDROCARBONS, OR AS A PART OF MEASURES TAKEN TO AMELIORATE ANY POSSIBLE LAND SUBSIDENCE OR AS A PART OF ANY PROGRAM TO PREVENT SALT WATER INTRUSION INTO DOMESTIC WATER SUPPLIES, IN FAVOR OF THE CITY OF LONG BEACH, A MUNICIPAL CORPORATION BOTH IN ITS MUNICIPAL CAPACITY AND AS TRUSTEE CREATED PURSUANT TO CHAPTER 102, STATUTES OF 1925 AND CHAPTER 158, STATUTES OF 1935, A SUBSEQUENTLY AMENDED AND MODIFIED, AS SET FORTH IN A DEED RECORDED ON APRIL 13, 1971 AS INSTRUMENT NO. 11 IN BOOK D5022 PAGE 979, OFFICIAL RECORDS AS GRANTED BY DEED RECORDED APRIL 13, 1971 AS INSTRUMENT NO. 13, IN BOOK D5023 PAGE 991, OFFICIAL RECORDS AS RESERVED IN DEED RECORDED APRIL 13, 1971 AS INSTRUMENT NO. 14 IN BOOK D5024 PAGE 1 OF OFFICIAL RECORDS, AS RESERVED IN DEED RECORDED APRIL 23, 1973 AS INSTRUMENT NO. 2971 IN BOOK D5842 PAGE 312 OF OFFICIAL RECORDS AND AS RESERVED IN DEED RECORDED APRIL 23, 1973 AS INSTRUMENT NO. 2977 IN BOOK D5842 PAGE 384, OFFICIAL RECORDS.

AFFECTS: THE HEREIN DESCRIBED LAND AND OTHER LAND

7.    An unrecorded lease dated , executed by NONE SHOWN as lessor and SECURITY PACIFIC NATIONAL BANK, A NATIONAL BANKING ASSOCIATION as lessee, as disclosed by a A AMENDMENT TO OIL AND GAS LEASE DRILLSITE LEASE AND WELLBORE AGREEMENT recorded August 11, 1975 as INSTRUMENT NO. 2863 of Official Records.

Defects, liens, encumbrances or other matters affecting the leasehold estate, whether or not shown by the public records.

8.    THE DRILL THROUGH EASEMENTS AND OTHER EASEMENTS AND RIGHTS IN AND TO ALL THE DRILL THROUGH EASEMENTS AS GRANTED TO SECURITY PACIFIC NATIONAL BANK, AS TRUSTEE UNDER THE WILL OF WARREN F. MCGRATH, DECEASED, BY THE CITY OF LONG BEACH, AS REFLECTED IN THE MCGRATH-MACCO BOUNDARY SETTLEMENT AND EXCHANGE AGREEMENT, RECORDED DECEMBER 14, 1970 IN BOOK M3634 PAGE 399, AS AMENDED BY THE FIRST AMENDMENT THERETO, RECORDED DECEMBER 14, 1970 IN BOOK M3634 PAGE 526 AND THE SECOND AMENDMENT THERETO, RECORDED APRIL 3, 1973 IN BOOK M4337 PAGE 57, ALL OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND AS FURTHER REFLECTED IN VARIOUS DEEDS FROM THE CITY OF LONG BEACH, ALL OF WHICH ARE RECORDED IN OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID EASEMENT AND RIGHTS WERE RESERVED BY SECURITY PACIFIC NATIONAL BANK, AS TRUSTEE UNDER THE WILL OF WARREN F. MCGRATH, DECEASED, IN DEED RECORDED JUNE 30, 1983 AS INSTRUMENT NO. 83-740564, OFFICIAL RECORDS.

SAID MATTER AFFECTS PORTIONS OF SAID LAND BELOW A DEPTH OF 500 FEET.

Order Number: **O-SA-5961164**
Page Number: 4

9.    SAID EASEMENT AND RIGHTS GRANTED TO THE LESSEE OVER THOSE PORTIONS OF LAND MORE PARTICULARLY DESCRIBED IN THE FOLLOWING LEASES:

A. THAT CERTAIN OIL AND LEASE, DRILLSITE LEASE AND WELLBORE AGREEMENT, DATED DECEMBER 12, 1974 BETWEEN EXCHANGER AND WARREN E. TEN EYCK AND DANIEL W. ELLIOTT, JR., AS AMENDED BY AMENDMENT TO OIL AND GAS LEASE, DRILLSITE LEASE AND WELLBORE AGREEMENT DATED AUGUST 7, 1975; EXTENSION OF OIL AND GAS LEASE, DATED OCTOBER 19, 1976; EXTENSION OF OIL AND GAS LEASE, DATED FEBRUARY 12, 1978; EXTENSION AND MODIFICATION OF OIL AND GAS LEASE DATED MAY 6, 1980; SECOND AMENDMENT TO OIL AND GAS LEASE, DRILLSITE LEASE AND WELLBORE AGREEMENT DATED MAY 6, 1980; THIRD AMENDMENT TO OIL AND GAS LEASE, DRILLSITE LEASE AND WELLBORE AGREEMENT DATED MAY 6, 1980; FOURTH AMENDMENT TO OIL AND GAS LEASE; DRILLSITE LEASE AND WELLBORE AGREEMENT DATED FEBRUARY 9, 1981; FIFTH AMENDMENT TO OIL AND GAS LEASE, DRILLSITE LEASE AND WELLBORE AGREEMENT, DATED AUGUST 28, 1961; AND SIX THE AMENDMENT TO OIL AND GAS LEASE, DRILLSITE LEASE AND WELLBORE AGREEMENT DATED JANUARY 4, 1982.

B. THAT CERTAIN OIL LEASE DATED SEPTEMBER 30, 1936 BETWEEN WARREN F. MCGRATH AND CONTINENTAL OIL COMPANY, AND THAT CERTAIN OIL AND GAS LEASE DATED JULY 29, 1958 BY AND BETWEEN SECURITY PACIFIC NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF WARREN F. MCGRATH, AND DOUGLAS OIL CO. OF CALIFORNIA, ATLANTIC OIL COMPANY, AND F. E. FAIRFIELD, AS SAID LEASES HAVE BEEN MODIFIED BY MODIFICATION AGREEMENT DATED DECEMBER 15, 1972; AGREEMENT DATED SEPTEMBER 22, 1978; AMENDMENT TO AGREEMENT, RE OIL AND GAS LEASES, DATED JUNE 10, 1980; AND AMENDMENT OF OIL AND GAS LEASE AND QUITCLAIM DATED NOVEMBER 19, 1980.

ALL OF SAID EASEMENTS AND RIGHTS SHALL SURVIVE THE TERMINATION OF SAID LEASES, AS DISCLOSED IN AND RESERVED PERPETUALLY BY SECURITY FIRST NATIONAL BANK, AS TRUSTEE UNDER THE WILL OF WARREN F. MC-GRATH, DECEASED, IN DEED RECORDED JUNE 30, 1983 AS INSTRUMENT NO. 83-740564.

FOR: THE RIGHT TO PLACE, REPLACE, AND MAINTAIN SAID EASEMENT AND RIGHTS
AFFECTS: THE RIGHT TO ENTER UPON, OVER, ALONG, ACROSS, UNDER AND THROUGH SAID LAND

10.    An easement for public utilities and incidental purposes in the document recorded February 17, 1982 as INSTRUMENT NO. 82-172305 of Official Records.

11.    RECITALS AS SHOWN ON THAT CERTAIN MAP KNOWN AS TRACT NO. 45920, WHICH, AMONG OTHER THINGS STATES:

"SAID EASEMENTS FOR STORM DRAIN SHALL INCLUDE SURFACE DRAINAGE COMING FROM A PUBLIC STREET AND ENTERING OR PASSING ON A PRIVATE STREET FOR DISPOSITION INTO THE PUBLIC SYSTEM OUTLET DOWN SYSTEM DOWN STEAM.THE CITY OF LONG BEACH SHALL BE FREE FROM ANY LIABILITY FOR DAMAGES, ON ACCOUNT OF SAID SURFACE DRAINAGE EASEMENT ON PRIVATE STREETS AS MAINTENANCE OF SAID PRIVATE STREETS ARE TO BE DONE BY THE OWNER OF THE TRACT, WE HEREBY OFFER TO THE PUBLIC USE THE PRIVATE STREETS SHOWN ON SAID MAP RESERVING TO OURSELVES ALL ORDINARY USES OF SAID LAND EXCEPT THE ERECTION OR CONSTRUCTION OF ANY STRUCTURE NOT ORDINARILY PLACED IN PUBLIC STREETS, UNTIL SUCH TIME AS SAID STREET IS ACCEPTED AND OPENED FOR PUBLIC USE, WE DO HEREBY, AND FOR OUR HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS AND ASSIGNS, JOINTLY AND SEVERALLY AGREE THAT ALL PRIVATE STREETS SHOWN ON THIS MAP WILL ACCEPT DRAINAGE WATER DISCHARGED FROM ANY ADJOINING STREET, WHETHER IT BY A PUBLIC STREET, OR A PRIVATE AND FUTURE STREET, AND FURTHER AGREE THAT THE CITY OF LONG BEACH IS HEREBY FREE AND CLEAR OF ANY CLAIMS OR DAMAGES ARISING FROM SAID DRAINAGE.".

Order Number: **O-SA-5961164**
Page Number:  5

12.  Covenants, conditions, restrictions, assessments, liens, charges, terms and provisions in the
     document recorded July 13, 1983 as INSTRUMENT NO. 83-793623 of Official Records, which provide
     that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of
     trust made in good faith and for value, but deleting any covenant, condition, or restriction indicating
     a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation,
     familial status, disability, handicap, national origin, genetic information, gender, gender identity,
     gender expression, source of income (as defined in California Government Code § 12955(p)) or
     ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or
     California Government Code § 12955. Lawful restrictions under state and federal law on the age of
     occupants in senior housing or housing for older persons shall not be construed as restrictions based
     on familial status.

     Document(s) declaring modifications thereof recorded March 01, 1984 as INSTRUMENT NO. 84-
     257277 AND JULY 24, 1987 AS INSTRUMENT NO. 87-1182553, BOTH of Official Records.

13.  Any and all offers of dedications, conditions, restrictions, easements, notes and/or provisions shown
     or disclosed by the filed or recorded map referred to in the legal description including but not limited
     to: PUBLIC UTILITY and incidental purposes affecting said land.

14.  An easement for WATER, GAS, OIL, POWER, PIPE LINES AND TELEPHONE LINES and incidental
     purposes in the document recorded September 28, 1989 as INSTRUMENT NO. 89-1569322 of Official
     Records.

15.  An easement for public utilities and incidental purposes in the document recorded July 02, 1990 as
     INSTRUMENT NO. 90-1171222 of Official Records.

16.  Covenants, conditions, and restrictions in the document recorded June 02, 1980 as INSTRUMENT NO.
     80-537485 of Official Records, which provide that a violation thereof shall not defeat or render invalid
     the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any
     covenant, condition, or restriction indicating a preference, limitation or discrimination based on race,
     color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic
     information, gender, gender identity, gender expression, source of income (as defined in California
     Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions
     violation 42 U.S.C. § 3604(c) or California Government Code § 12955. Lawful restrictions under state
     and federal law on the age of occupants in senior housing or housing for older persons shall not be
     construed as restrictions based on familial status.

17.  An easement for INGRESS AND EGRESS and incidental purposes in the document recorded June 30,
     1983 as INSTRUMENT NO. 83-740564 of Official Records.

18.  The Terms, Provisions and Easement(s) contained in the document entitled "CHANNEL EASEMENT
     AND MAINTENANCE AGREEMENT" recorded July 24, 1987 as INSTRUMENT NO. 87-1182590 of
     Official Records.

19.  An easement for BOAT SLIP and incidental purposes in the document recorded February 21, 1989
     as INSTRUMENT NO. 89-274788 of Official Records.

20.  Covenants, conditions, restrictions, assessments, liens, charges, terms and provisions in the
     document recorded February 21, 1989 as INSTRUMENT NO. 89-274789 of Official Records, which
     provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or
     deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction
     indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual
     orientation, familial status, disability, handicap, national origin, genetic information, gender, gender

Order Number: **O-SA-5961164**
Page Number: 6

identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code § 12955. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Document(s) declaring modifications thereof recorded September 28, 1989 as INSTRUMENT NO. 89-1569326; FEBRUARY 16, 1993 AS INSTRUMENT NO. 93-288973; SEPTEMBER 27, 1994 AS INSTRUMENT NO. 94-1771494; MARCH 18, 1998 AS INSTRUMENT NO. 98-443742; MAY 20, 1998, INSTRUMENT NO. 98-849194; JUNE 2, 1998, INSTRUMENT NO. 98-929750 AND JULY 18, 1997, INSTRUMENT NO. 97-1090380, ALL of Official Records.

21.    Covenants, conditions, and restrictions in the document recorded February 21, 1989 as INSTRUMENT NO. 89-274790 of Official Records, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code § 12955. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Document(s) declaring modifications thereof recorded September 27, 1994 as INSTRUMENT NO. 94-1771495 AND MARCH 18, 1998 AS INSTRUMENT NO. 98-443743, BOTH of Official Records.

22.    ANY INVALIDITY OF THE BOAT SLIP EASEMENT INTEREST INSURED HEREIN BE REASON BY OF IT CONVEYANCE TO OR FROM A PERSON OR ENTITY THAT DOES NOT OWN OR CONCURRENTLY ACQUIRE A FEE INTEREST IN ANY PORTION OF THAT CERTAIN REAL PROPERTY LOCATED IN THE CITY OF LONG BEACH, COUNTY OF LOS ANGELES, DESCRIBED AS LOTS 2, 3, 6 AND 14 THROUGH 26, OF TRACT 36414, AS PER MAP RECORDED IN BOOK 966 PAGES 54 TO 63 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

23.    Covenants, conditions, and restrictions in the document recorded July 18, 1997 as INSTRUMENT NO. 97-1090379 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code § 12955. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

24.    Covenants, conditions, restrictions, assessments, liens, charges, terms and provisions in the document recorded February 21, 1989 as INSTRUMENT NO. 89-274789 AND FEBRUARY 21, 1989 AS INSTRUMENT NO. 89-274790; FEBRUARY 16, 1993 AS INSTRUMENT NO. 93-288973; MARCH 18, 1998 AS INSTRUMENT NO. 98-443742; JUNE 13, 1990 AS INSTRUMENT NO. 90-1052952 AND DECEMBER 18, 1998, INSTRUMENT NO. 98-2297768 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California

Order Number: **O-SA-5961164**
Page Number: 7

Government Code § 12955. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

25. An easement for PRIVATE AREA DRAIN and incidental purposes in the document recorded March 18, 1998 as INSTRUMENT NO. 98-443742 AND DECEMBER 18, 1998, INSTRUMENT NO. 98-297768, BOTH of Official Records.

26. An easement for SIDEYARD and incidental purposes in the document recorded December 18, 1998 as INSTRUMENT NO. 98-443742 AND DECEMBER 18, 1998 AS INSTRUMENT NO. 98-2297768, BOTH of Official Records.

27. A deed of trust to secure an original indebtedness of $1,150,000.00 recorded APRIL 28, 2006 as INSTRUMENT NO. 06-937210 OF OFFICIAL RECORDS.
    Dated:                    APRIL 22, 2006
    Trustor:                  ALAIN ELIE AZOULAY
    Trustee:                  PRLAP, INC.
    Beneficiary:              BANK OF AMERICA, N.A.

    A document recorded APRIL 28, 2015 as INSTRUMENT NO. 15-475868 OF OFFICIAL RECORDS provides that QUALITY LOAN SERVICE CORPORATION was substituted as trustee under the deed of trust.

    A notice of default recorded APRIL 28, 2015 as INSTRUMENT NO. 15-475869 OF OFFICIAL RECORDS.

    A notice of trustee's sale recorded APRIL 02, 2019 as INSTRUMENT NO. 19-285787 OF OFFICIAL RECORDS.

28. A notice of homeowners association assessment lien recorded AUGUST 10, 2010 as INSTRUMENT NO. 10-1108090 OF OFFICIAL RECORDS.

    Association:              ALAIN AZOULAY
    Amount:                   $1,440.00, and any other amounts due thereunder.

29. A notice of homeowners association assessment lien recorded MAY 29, 2012 as INSTRUMENT NO. 12-790961 OF OFFICIAL RECORDS.

    Association:              ALAIN ELIE AZOULAY
    Amount:                   $1,555.00, and any other amounts due thereunder.

    A notice of default recorded March 06, 2013 as INSTRUMENT NO. 13-340807 OF OFFICIAL RECORDS.

30. A certified copy of a judgment or an abstract thereof, recorded June 29, 2012 as INSTRUMENT NO. 12-972496 OF OFFICIAL RECORDS.
    Court:                    SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
    Case No.:                 11C04567
    Debtor:                   ALAIN AZOULAY
    Creditor:                 MIDLAND FUNDING LLC
    Amount:                   $8,893.10, and any other amounts due thereunder.

Order Number: **O-SA-5961164**
Page Number: 8

31.    A certified copy of a judgment or an abstract thereof, recorded August 22, 2012 as INSTRUMENT NO.
       12-1249812 OF OFFICIAL RECORDS.

| | |
|---|---|
| Court: | SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
| Case No.: | PC047620 |
| Debtor: | ALAIN AZOULAY, GARY MASON, ESQ., COUNSEL FOR OLD TOWNE FINANCIAL, INC., CAMBRIDGE FUNDING, INC. C/O CALIFORNIA SECRETARY OF STATE |
| Creditor: | PAUL W. WYLIE, TRUSTEE OF THE URBAN COYOTES LIVING TRUST DATED JULY 1, 2001 AND LINTON FAMILY LLC, A NEVADA LIMITED LIABILITY COMPANY |
| Amount: | $6281.90, and any other amounts due thereunder. |

32.    A certified copy of a judgment or an abstract thereof, recorded July 15, 2014 as INSTRUMENT NO.
       14-728764 OF OFFICIAL RECORDS.

| | |
|---|---|
| Court: | SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
| Case No.: | 13N12719 |
| Debtor: | ALAIN E AZOULAY, AN INDIVIDUAL |
| Creditor: | CACH, LLC C/O: MANDARICH LAW GROUP, LLP |
| Amount: | $3092.40, and any other amounts due thereunder. |

33.    Any easements and/or servitudes affecting easement parcel(s) 2, 3 AND 4 herein described.

34.    Rights of parties in possession.

35.    Water rights, claims or title to water, whether or not shown by the public records.

36.    This transaction may be subject to a Geographic Targeting Order ("GTO") issued pursuant to the
       Bank Secrecy Act. Information necessary to comply with the GTO must be provided prior to the
       closing. This transaction will not be insured until this information is submitted, reviewed and found to
       be complete.

Order Number: **O-SA-5961164**
Page Number:  9

---

## INFORMATIONAL NOTES

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.    General and special taxes and assessments for the fiscal year 2018-2019.

    First Installment:              $10,433.84, PAID
    Penalty:                        $0.00
    Second Installment:             $10,433.83, PAID
    Penalty:                        $0.00
    Tax Rate Area:                  43-05500
    A. P. No.:                      7242-028-104

2.    This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

    When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence LYING WITHIN A PLANNED UNIT DEVELOPMENT known as 327 SALTA VERDE POINT, LONG BEACH, CA.

3.    According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

    None

    NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number: **O-SA-5961164**
Page Number: **10**

## LEGAL DESCRIPTION

Real property in the City of Long Beach, County of Los Angeles, State of California, described as follows:

PARCEL 1

LOT 45 AND 46, OF TRACT NO 45920, IN THE CITY OF LONG BEACH, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1137 PAGE(S) 20 TO 26 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT THEREFROM THAT PORTION OF SAID LOT 45 LYING NORTHERLY AND NORTHEASTERLY OF THE FOLLOWING DESCRIBED LINE

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 45 DISTANT NORTH 61° 33' 51" EAST 25.80 FEET FROM THE SOUTHWESTERLY TERMINUS OF THE COURSE SHOWN AS NORTH 61 ° 33' 51" EAST 62.87 FEET ALONG THE NORTHWESTERLY LINES OF SAID LOTS 45 AND 44 OF SAID TRACT, THENCE LEAVING SAID NORTHWESTERLY LINES OF SAID LOTS 45 AND 44 OF SAID TRACT, THENCE LEAVING SAID NORTHWESTERLY LINE, SOUTH 18° 00' 09" EAST 44.50 FEET, THENCE SOUTH 42° 27' 09" EAST 34.33 FEET TO THE SOUTHEASTERLY LINE OF SAID LOT 45

ALSO EXCEPT THEREFROM THOSE PORTIONS OF SAID LOTS 45 AND 46 LYING SOUTHWESTERLY OF THE FOLLOWING DESCRIBED LINE

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 46 DISTANT SOUTH 47° 32' 51" WEST 27.55 FEET FROM THE NORTHEASTERLY TERMINUS OF THE COURSE SHOWN AS NORTH 47° 32' 51" EAST 80.19 FEET ALONG THE NORTHWESTERLY LINES OF SAID LOTS 46 AND 47 OF SAID TRACT, THENCE LEAVING SAID NORTHWESTERLY LINE SOUTH 42° 27' 09" EAST 44.62 FEET, THENCE NORTH 47° 32' 51" EAST 6.00 FEET, THENCE SOUTH 42° 27' 09" EAST 52.09 FEET TO THE EASTERLY LINE OF SAID LOT 45

SAID LAND IS DESCRIBED AS PARCEL 45 IN LOT LINE ADJUSTMENT RECORDED JANUARY 29, 1998 AS INSTRUMENT NO 98-154949

EXCEPT THEREFROM ALL MINERALS, GAS, OIL, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES, IN AND UNDER SAID LAND LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE, WITHOUT HOWEVER THE RIGHT OF SURFACE ENTRY, AS RESERVED OR EXCEPTED IN A DEED RECORDED APRIL 13, 1971 AS INSTRUMENT NO 14 IN BOOK D-5024 PAGE 1, OFFICIAL RECORDS

EXCEPT THEREFROM ALL MINERALS, GAS, OIL, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES, IN AND UNDER SAID LAND LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE, WITHOUT HOWEVER, THE RIGHT OF SURFACE ENTRY, AS RESERVED OR EXCEPTED IN DEED(S) OF RECORD ALSO EXCEPT CERTAIN RIGHTS AND RESERVATIONS FOR VARIOUS PURPOSES AS CONTAINED AND AS RESERVED IN THE DEED FROM SECURITY FIRST NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, AS TRUSTEE UNDER THE WILL OF WARREN F MCGRATH, DECEASED IN DEED RECORDED JUNE 30, 1983 AS INSTRUMENT NO 83-740564.

SAID RIGHT AND RESERVATIONS ARE QUOTED FROM SAID DEED AND RECITED AS FOLLOWS

EXCEPT THEREFROM ALL MINERALS, GAS, OIL, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES, IN AND UNDER SAID LAND LYING BELOW A DEPTH OF 300 FEET FROM THE SURFACE, WITHOUT HOWEVER, THE RIGHT OF SURFACE ENTRY, AS RESERVED OR EXCEPTED IN DEED(S) OF RECORD

GRANTEE SHALL HAVE NO RIGHT TO DRILL INTO OR THROUGH ANY PORTION OF SAID RESERVED LANDS AND SHALL HAVE NO RIGHT TO GRANT TO OTHERS ANY SUCH RIGHT TO DRILL

Order Number:  **O-SA-5961164**
Page Number:  11

PARCEL 2

AN EXCLUSIVE EASEMENT FOR SIDEYARD PURPOSES OVER A PORTION OF AN ADJACENT LOT TO THE PROPERTY ON TRACT 45920, WHICH PORTION IS SHOWN AND ASSIGNED ON EXHIBIT "C" TO THE NOTICE AND DESCRIBED AS A SIDEYARD EASEMENT AREA IN THE HOMES DECLARATION, SUCH AS EASEMENT IS LIMITED BY THE HOMES DECLARATION

PARCEL 3

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS AND EGRESS, USE AND ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE HOMES DECLARATION, THE SLIP DECLARATION, THE HOMES NOTICE AND THE SLIP NOTICE.

PARCEL 4

AN EASEMENT APPURTENANT TO PARCELS 1 AND 2, FOR ACCESS, INGRESS AND EGRESS, OVER LOTS 9 AND 10 OF TRACT 36414 IN THE CITY OF LONG BEACH, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 966 PAGES 54 TO 63 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND AS AMENDED BY "CERTIFICATE OF CORRECTION" RECORDED MARCH 16, 1983 AS INSTRUMENT NO 83-294243, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT THEREFROM ALL MINERALS, GAS, OIL, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES, IN AND UNDER SAID LAND LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE, WITHOUT HOWEVER, THE RIGHT OF SURFACE ENTRY, AS RESERVED OR EXCEPTED IN DEED(S) OF RECORD.

APN: 7242-028-104

Order Number: **O-SA-5961164**
Page Number: 12



Order Number: **O-SA-5961164**
Page Number: 13

### *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

Order Number:  **O-SA-5961164**
Page Number:  14

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

## CLTA STANDARD COVERAGE POLICY – 1990
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.


## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.  building;

    b.  zoning;

    c.  land use;


*First American Title*
Page 14 of 19

EXHIBIT "1"

Order Number: **O-SA-5961164**
Page Number: 15

    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.    The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.    The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.    Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.    Failure to pay value for Your Title.
6.    Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.    The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.    Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i) the occupancy, use, or enjoyment of the Land;
        (ii) the character, dimensions, or location of any improvement erected on the Land;
        (iii) the subdivision of land; or
        (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

EXHIBIT "1"

Order Number: **O-SA-5961164**
Page Number: 16

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).


The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.


### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]


## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

EXHIBIT "1"

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.


The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.  [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

Order Number:  **O-SA-5961164**
Page Number:  18

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

 *First American Title*

**Privacy Information**
**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.
In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**
First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**
Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.
-----------------------------------------------------------------------
**Fair Information Values**
**Fairness** We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
**Use** We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.
**Education** We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
**Security** We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

Form 50-PRIVACY (9/1/10)                          Page 1 of 1                          Privacy Information (2001-2010 First American Financial Corporation)

# EXHIBIT 2

# EXHIBIT 2



C A L I F O R N I A
A S S O C I A T I O N
O F   R E A L T O R S®

# RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form RPA-CA, Revised 12/15)

**Date Prepared:** October 16, 2019

**1. OFFER:**

**A. THIS IS AN OFFER FROM** Oscar Mendoza and Elizabeth Loera and Linda Mendoza ("Buyer").

**B. THE REAL PROPERTY** to be acquired is 327 Salta Verde Point , situated in Long Beach (City), Los Angeles (County), California, 90803-6831 (Zip Code), Assessor's Parcel No. 7242-028-104 ("Property").

**C. THE PURCHASE PRICE** offered is One Million Three Hundred Fifty Thousand Dollars $ 1,350,000 .

**D. CLOSE OF ESCROW** shall occur on [X] Date Specified in Escrow Instructions ~~(date) (or~~ ~~Days After Acceptance).~~

**E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

**A. DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

Listing Agent Coldwell Banker (Print Firm Name) is the agent of (check one): [ ] the Seller exclusively; or [ ] both the Buyer and Seller.

Selling Agent _____ (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): [ ] the Buyer exclusively; or [ ] the Seller exclusively; or [ ] both the Buyer and Seller.

**C. POTENTIALLY COMPETING BUYERS AND SELLERS:** ~~The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).~~

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 50,000

(1) Buyer Direct Deposit: Buyer shall deliver ~~deposit directly to Escrow Holder by electronic funds transfer,~~ [X] cashier's check, [ ] ~~personal check,~~ [ ] ~~other~~ *Made out to the Trustee* ~~within 3 business days after Acceptance (or~~ ~~);~~

~~OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or~~ ~~) to the agent submitting the offer (or to~~ ~~), made payable to~~ ~~. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or~~ ~~). Deposit checks given to agent shall be an original signed check and not a copy.~~

(Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)

**B. INCREASED DEPOSIT:** ~~Buyer shall deposit with Escrow Holder an increased deposit in the amount of~~ . . . . . . . . $ ~~within~~ **Days After Acceptance** ~~(or~~ ~~). If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.~~

**C.** [ ] **ALL CASH OFFER:** No loan is needed to purchase the Property. ~~This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or [ ] Buyer shall, within 3 (or _____) Days After Acceptance, Deliver to Seller such verification.~~

**D.** [ ] **LOAN(S):**

~~(1) FIRST LOAN: in the amount of~~ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ This loan will be conventional financing or [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____. This loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.

(2) [ ] **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____. This loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.

(3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____) Days** After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.

**E. ADDITIONAL FINANCING TERMS:** Estate to Credit Buyer $25,000 Towards Non-Recurring Closing Costs at Close of Escrow.

**F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . $ to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 1,325,000

Buyer's Initials ( OM )( EL )( LM )   Seller's Initials ( RM )( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

HOM / Sotheby's International Realty, 1200 Newport Center Drive, Suite 100 Newport Beach, CA 92660    Phone: (714) 696-5765    Fax:    Trustee -
CLARENCE YOSHIKANE    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

EXHIBIT "2"

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☒ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. ~~Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.~~

**J. LOAN TERMS:**

~~(1) LOAN APPLICATIONS: Within 3 (or ____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or~~ loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the ~~appraisal contingency.~~

**(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

~~OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).~~

~~5. ADDENDA AND ADVISORIES:~~

**A. ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other _____ |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ~~Short Sale Information and Advisory (C.A.R. Form SSIA)~~ | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other _____ |

**6. OTHER TERMS:** *PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED. PEST CONTROL/TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER. TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY.*

**7. ALLOCATION OF COSTS**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
prepared by *Seller's Choice*

**(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

Buyer's Initials ( *OM* )( *EL* )( *LM* )          Seller's Initials ( *Ron* )( _____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Trustee -

EXHIBIT "2"

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) [X] Buyer [ ] Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

~~(2) (i) [ ] Buyer [ ] Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports~~ if required as a condition of closing escrow under any Law.

    (ii) [ ] Buyer [ ] Seller shall pay the cost of compliance with any ~~other minimum~~ mandatory government retrofit standards required as a condition of closing escrow ~~under any Law~~, whether the work is required to be completed before or after COE.

    (iii) ~~Buyer shall be provided, within~~ the time specified in paragraph 14A, a copy of any required government conducted ~~or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.~~

**C. ESCROW AND TITLE:**

(1) (a) [X] Buyer [X] Seller shall pay escrow fee *each to pay their own* _____.
    (b) Escrow Holder shall be *Seller's Choice* _____.
    (c) The Parties shall, within 5 (or ____ ) Days After receipt, sign and return Escrow Holder's general provisions.

(2) (a) [ ] Buyer [X] Seller shall pay for *owner's* title insurance policy specified in paragraph 13E _____.
    (b) Owner's title policy to be issued by *Seller's Choice* _____.
    (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

(1) [ ] Buyer [X] Seller shall pay County transfer tax or fee _____.
(2) [ ] Buyer [~~Seller~~] shall pay City transfer tax or fee _____.
(3) [ ] Buyer [ ] Seller shall pay Homeowners' Association ("HOA") transfer fee *split 50/50* _____.
(4) ~~Seller shall pay HOA fee for preparing documents required to be delivered by Civil Code §4525~~
(5) [X] Buyer [~~Seller~~] shall pay HOA fees for preparing all documents ~~other than those required by Civil Code §4525~~
(6) Buyer to pay for any HOA certification fee.
(7) [ ] Buyer [~~Seller~~] shall pay for any private transfer fee _____.
(8) [ ] Buyer [~~Seller~~] shall pay for _____.
(9) [ ] Buyer [~~Seller~~] shall pay for _____.
(10) [ ] Buyer [~~Seller~~] shall pay for the cost, not to exceed $ _____, of a standard (or [ ] upgraded) one-year home warranty plan, issued by ~~Click here to select your Service Provider~~ _____, with the following optional coverages: [ ] Air Conditioner [ ] Pool/Spa [ ] Other: _____.
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
OR [ ] **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: [X] all stove(s), except _____ ; [ ] all refrigerator(s) except _____ ; [ ] all washer(s) and dryer(s), except _____ ;
(3) The following additional items: _____.
(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( [ ] are NOT) included in the sale.
(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and ____ _____, and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____.
_____. Brackets attached to walls, floors or ceilings for any such component, furniture or item ~~shall remain with the Property (or) [ ] will be removed and holes or other damage shall be repaired, but not painted).~~

Buyer's Initials ( _DM_ )( _EL_ ) _LM_                    Seller's Initials ( _RM_ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)**

EXHIBIT "2"

Property Address: ..., 327 Salta Verde Pt, Long Beach, CA 90803-6831          Date: October 16, 2019

**9.  CLOSING AND POSSESSION:**
   **A.**  Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   **B.  Seller-occupied or vacant property:** Possession shall be delivered to Buyer (i) at 6 PM or (____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on ____.
   ~~C.  Seller remaining in possession After Close Of Escrow: If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as~~ ☐ ~~C.A.R. Form SIP, for Seller continued occupancy of less than 30 days,~~ ☐ ~~C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.~~
   **D.  Tenant-occupied property:** Property shall be vacant at least **5 (or ____) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
   OR ☐ Tenant to remain in possession (C.A.R. Form TIP).
   ~~E.  At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.~~
   **F.**  At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**~~10.  STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:~~**
   **A. (1)**  Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
   **(2)**  Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
   **(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.
   **(4)**  Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).
   **(5)**  Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
   **(6)**  In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
   **(7)**  If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days After** Delivery in person, or **5 Days After** Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
   **B.  NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.
   **C.  WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
   **D.  MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
   **E.  NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
   **F.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
   ~~(1)~~ **SELLER HAS: 7 (or ____) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a ~~planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).~~

Buyer's Initials ( PM ) ( EL )          Seller's Initials ( RM ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Trustee -

EXHIBIT "2"

~~(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has~~
**3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents ~~required~~ by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement ~~containing~~ the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent ~~12 months~~ of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** ~~smoking~~ restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and ~~any CI Disclosures~~ in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement ~~as specified~~ in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow ~~or direct to HOA or management company to pay for any of the above.~~

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) **"AS-IS"** in its **PRESENT** physical condition as of the date of Acceptance and ~~(b) subject to Buyer's Investigation rights~~; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

~~A.   Seller  shall, within the  time specified  in paragraph 14A,  DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.~~

**B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or ~~(ii) request that Seller make Repairs or take other action.~~

**C.** **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:** NOT

**A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph ~~and paragraph 14B. Within the time specified in paragraph 14B(1)~~, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; ~~(iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA)~~; (v) review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, ~~and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement~~.

**C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

**D.** **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

~~A.   Within the time specified in paragraph 14,~~ Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. ~~Buyer's review of~~ the Preliminary Report and any other matters which may affect title are a contingency of this Agreement ~~as specified~~ in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a ~~Preliminary Report~~, conduct a search of the General Index for all Sellers except banks or other ~~institutional lenders selling~~ properties they acquired through foreclosure (REOs), corporations, and government ~~entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.~~

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

**C.** ~~Within the time specified in paragraph 14A,~~ Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. **THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.**

Buyer's Initials ( *OM* )( *EL* ) *LM*        Seller's Initials ( *RM* )( _____ )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com       Trustee -

Property Address: ..., 327 Salta Verde Pt, Long Beach, CA 90803-6831          Date: October 16, 2019

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

~~14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended,~~ altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

**A. SELLER HAS: 7 (or ___ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

**B. (1) BUYER HAS: 17 (or ___ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ___ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

**C.** ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

**D. SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

**F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise agreed in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ___ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good** ~~faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).~~

Buyer's Initials ( *OM* ) ( *EL* ) ( *L M* )          Seller's Initials ( *KM* ) ( ___ )

RPA-CA REVISED 12/15 (PAGE 6 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Trustee -

EXHIBIT "2"

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or** ☐ **) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; ~~(ii) Repairs have been completed as agreed; and~~ **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

~~**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.~~

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, ~~or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.~~

   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for himself/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, ~~within 3 Days After Acceptance,~~ evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ____ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( _PM_ )( _EL_ )( _PM_ )          Seller's Initials ( _KDM_ )( _____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Trustee -

EXHIBIT "2"

Property Address: ..., 327 Salta Verde Pt, Long Beach, CA 90803-6831                    Date: October 16, 2019

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

~~21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:~~

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.** If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials _____ / _____                    Seller's Initials _____ / _____

~~22. DISPUTE RESOLUTION:~~

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

B. **ARBITRATION OF DISPUTES:**
The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _____ / _____                    Seller's Initials _____ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( DM )( EL )                    Seller's Initials ( RM )( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Trustee -

EXHIBIT "2"

Property Address: ..., , 327 Salta Verde Pt. Long Beach, CA 90803-6831     Date: October 16, 2019

~~(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.~~

~~(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.~~

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

~~**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.~~

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. ~~The liquidated damages paragraph or the arbitration of~~ disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required ~~until agreement is reached~~. Seller has the right to continue to offer the Property for sale and to accept any ~~other offer at any~~ time prior to notification of Acceptance. The Parties have read and acknowledge receipt of ~~a Copy of the~~ offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer ~~subsequently defaults, Buyer may be responsible for payment of Brokers' compensation.~~ This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:

  **A. "Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

  **B. "Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

  **C. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

  **D. "Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

  **E. "Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

  **F. "Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

  **G. "Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

  **H. "Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

  **I. "Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

  **J. "Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

  **K. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

  **L. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

  **M. "Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

~~**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [ _____ ] [ ] AM/ [ ] PM, on _____ (date)).~~

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date October 16, 2019    BUYER *Oscar Mendoza*
(Print name)    Oscar Mendoza    DocuSigned by: 6C7F73C0B4A348A...
Date October 16, 2019    BUYER *Elizabeth Loera*
(Print name)    Elizabeth Loera    6C7F73C0B4A348A...      Linda Mendoza    DocuSigned by: C890CD2C2B9498

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( ___ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Trustee -



EXHIBIT "2"

Property Address: ..., 327 Salta Verde Pt, Long Beach, CA 90803-6831                    Date: October 16, 2019

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☒ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED** ~~COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:~~
_Trustee's Addendum_ .

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____

**(Print name)** _Richard A. Marshack, Ch 7 Trustee_ _____

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(_____ / _____) **(Do not initial if making a counter offer.)** CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
(Initials)      personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _____Coldwell Banker Residential Brokerage_____ CalBRE Lic. # _____
By _Clarence Yoshikane_    Clarence Yoshikane CalBRE Lic. # _00801398_ Date _October 16, 2019_
    2100118E0F7F422...
By _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) _____Coldwell Banker_____ CalBRE Lic. # _____
By _Clarence Yoshikane_    _Clarence Yoshikane_ CalBRE Lic. # _00801398_ Date _October 16, 2019_
    2100118E0F7F422...
By _____ CalBRE Lic. # _____ Date _____
Address _840 Newport Center Drive, Suite 100_ City _Newport Beach_ State _CA_ Zip _92660_
Telephone _(714) 606-5765_ Fax _____ E-mail _Clarence.Yoshikane@gmail.com_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked,) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
     Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
     Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement ( _____ ) ( _____ )
Buyer's Initials

Reviewed by _____
Broker or Designee

**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com      Trustee -



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 4/12)

No. _One_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ Other _____

dated _October 16, 2019_____, on property known as _327 Salta Verde Pt, Long Beach, CA 90803-6831_____

in which _____Oscar Mendoza and Elizabeth Loera and Linda Mendoza_____ is referred to as ("Buyer/Tenant")
and _Richard A. Marshack, Ch 7 Trustee_____ is referred to as ("Seller/Landlord").
Minimum overbid to be at least $10,000 higher than original bid. Overbidder to match all terms and conditions of original bid. If
a successful overbidder is accepted and confirmed by the court, then the successful overbidder is to reimburse original bidder up
to: $2,000 costs incurred. Only Physical Inspection, Termite Inspection, and Loan Appraisal are reimbursable expenses. Monies
to be collected by Escrow. Proof of monies spent to be given to overbidder.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _October 16, 2019_____

Buyer/Tenant _Oscar Mendoza_____
Oscar Mendoza

Buyer/Tenant _Elizabeth Loera_____  _Linda Mendoza_____
Elizabeth Loera

Date _11-4-19_____

Seller/Landlord _____
Richard A. Marshack, Ch 7 Trustee

Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 4/12 (PAGE 1 OF 1)**

EQUAL HOUSING OPPORTUNITY

**ADDENDUM (ADM PAGE 1 OF 1)**

BHHSCP / Berkshire Hathaway Home Services - California Properties, 2405 McCabe Way # 100 Irvine, CA 92614     Phone: (714) 606-5765     Fax:     Addendum
CLARENCE YOSHIKANE     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

EXHIBIT "2"

DocuSign Envelope ID: CA3FF922-821C-414C-82E4-3E1A23751162

## ADDENDUM TO PURCHASE AGREEMENT

This Addendum to Purchase Agreement (hereinafter called "Agreement") is entered into on October 16____, 2019, by and between <u>Oscar Mendoza and Elizabeth Loera and Linda Mendoza</u> (hereinafter "Buyer") and **Richard A. Marshack, as Chapter 7 Trustee for the Estate of: Alain Azoulay 8:19-bk-11550-TA,** (hereinafter called "Seller" or "Trustee") pursuant to the terms and conditions as follows:

## RECITALS

WHEREAS: The Debtor in the bankruptcy proceeding entitled **Alain Azoulay**, is the owner of record of certain real property commonly known as: **327 Salta Verde Point, Long Beach, CA (APN: 7242-028-104),** (Hereinafter the "Subject Property"), which is now property of the Estate.

WHEREAS: **Alain Azoulay** ("Debtor") filed a Voluntary Petition under Chapter 7 of Title 11, United States Bankruptcy Code, on **April 25, 2019**, initiating **Case No. 8:19-bk-11550-TA** ("Case") in the United States Bankruptcy Court, Central District of California.

WHEREAS: As a result of the Chapter 7 petition, **Richard A. Marshack**, was appointed as the Trustee to administer the assets of the bankruptcy estate, one of which was the Debtor's interest in the Subject Property.

WHEREAS: Pursuant to 11 U.S.C. Section 363, **Richard A. Marshack**, Chapter 7 Trustee and/or her attorneys will seek a Court Order authorizing the sale of the Subject Property.

WHEREAS: Buyers have made an offer on the Property by way of a Purchase Agreement.

WHEREAS: Any sale of the Property is subject to certain terms and conditions imposed by the Bankruptcy Code and ancillary procedures, and any sale requires an Order of the Bankruptcy Court.

EXHIBIT "2"

DocuSign Envelope ID: CA3FF922-821C-414C-82E4-3E1A23751162

**NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:**

**CONDITIONS OF SALE**

Court Approval: Seller agrees to proceed in good faith to obtain Court approval for the sale of property located at **327 Salta Verde Point, Long Beach, CA (APN: 7242-028-104)**, contemplated herein, within reasonable time period after said offer.

1. Broker's Compensation: Brokers and Agents are entitled to compensation only upon recordation of a deed or other evidence of title.

2. No Assignment: This agreement is between Buyer and Seller. Buyer shall have no right to assign the Escrow, this agreement, or transfer the Subject Property concurrent with closing without consent of Seller.

3. Title Insurance: The title insurance policy shall be subject only to liens, encumbrances, clouds and other matters as may appear on the preliminary title report, that are not to be removed at the close of Escrow, and have not been objected to by Buyer. Should Seller be unwilling or unable to eliminate those title matters disapproved by Buyer as above, the Seller may terminate this Agreement or; should Seller fail to deliver good and marketable title as provided above, Seller or Buyer may terminate this Agreement. In either case, the Buyer's deposit shall be returned to Buyer, and Buyer shall have no recourse against Seller, **Richard A. Marshack** as Bankruptcy Trustee, individually, or the **Law Offices of MARSHACK HAYS LLP, the bankruptcy estate of Alain Azoulay 8:19-bk-11550-TA**, or the Debtor, or any real estate agent, broker or attorney involved in this transaction including **Clarence Yoshikane of Coldwell Banker Residential Brokerage.**

4. Limitations of Sale: The parties acknowledge that the operation of the law has placed the Bankruptcy Trustee in a unique role as the Seller of the Subject Property, which is the subject of this agreement. Due to the nature of the Trustee's role in administering the bankruptcy estate, there are limitations as to the extent, type and character of the agreement under which the Trustee can convey the Subject Property. The Trustee proposes to sell this asset subject to certain limitations. The parties hereby acknowledge that they understand the terms under which this Subject Property is to be conveyed may vary substantially from the normal customs and trade within the real estate industry. Except where expressly mandated by operation of law, the Buyer consents to any such modifications and amendments.

EXHIBIT "2"

DocuSign Envelope ID: CA3FF922-821C-414C-82E4-3E1A23751162

5. <u>Purchase without Warranties:</u> Buyers acknowledge that they are purchasing the Subject Property from the Seller "AS IS" without warranties of any kind, expressed or implied, being given by the Seller, concerning the condition of the property or the quality of the title thereto, or any other matters relating to the Property. Buyer represents and warrants that they are purchasing the Subject Property as a result of their own investigations and are not buying the Subject Property pursuant to any representation made by any Broker, Agent, Accountant, Attorney or Employee acting at the direction, or on the behalf of the Seller. Buyers acknowledge that Buyers have inspected the Subject Property, and upon closing of Escrow governed by this Agreement, Buyer forever waives, for himself, his heirs, successors and assigns, any and all claims against the Debtors, their attorneys, agents and employees, the bankruptcy estate of **Alain Azoulay ("Estate") 8:19-bk-11550-TA**, **Richard A. Marshack**, as Bankruptcy Trustee and individually, and her Attorneys, Agents and Employees, arising or which might otherwise arise in the future concerning the Subject Property including **Clarence Yoshikane of Coldwell Banker Residential Brokerage**.

6. <u>Trustee's Liability:</u> Buyer acknowledges that the Trustee is acting in her official capacity only. No personal liability shall be sought or enforced against the Trustee with regard to this Agreement, including the Addendum, the assets, the sale of the Subject Property, or the physical condition of the Subject Property. In the event that the Trustee fails or refuses to complete the transaction for any reason, then the limit of the Trustee's liability is only to return any money paid to the Trustee by the Buyer, without deduction. Prior to and after the closing of escrow, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Assets of this transaction and Agreement; and all disputes arising before and after closing shall be resolved in said Court.

7. <u>Hold Harmless:</u>

Buyer understands the terms and conditions of the entire purchase contract and holds the estate, realtors, brokers, agents, **Richard A. Marshack**, and The **Law Offices of MARSHACK HAYS LLP**, her attorneys, agents and employees harmless from any liabilities arising from this contract.

EXHIBIT "2"



8.    Any and all disputes, which involve in any manner the Bankruptcy Estate or **Richard A. Marshack**, realtors, brokers, agents, arising from this Purchase Contract, this Addendum or relating in any manner to the Subject Property, shall be resolved only in the United States Bankruptcy Court, Central District of California, Santa Ana Division.

10.   **Seller will not provide a pest control report nor pay for any corrective work; nor shall Buyer receive any credit for corrective work.**

11.   **Buyer is aware that this offer is contingent upon Chapter 7 Bankruptcy Trustee approval, Bankruptcy Court confirmation & overbid procedures.**

12.   **Buyer has NO CONTINGENCIES in this transaction; including but not limited to the contingency of obtaining financing & appraisal, inspections, etc.**

      **Deposit is refundable only if Bankruptcy Court accepts overbid.**

13.   **Buyer to purchase property subject to existing Tenancy(s).**

      **Seller to transfer to Buyer prorated Rents and Security Deposits at Close of Escrow.**

      **Seller to provide Buyer with rental agreements prior to Buyer depositing Earnest Money Deposit with Trustee.**

14.   In addition to the **$50,000 deposit**, Buyer will deposit the additional sum of $ 1,300,000 **(Balance of purchase price)** into escrow on or before the close of escrow.

**I, the Buyer herein, have reviewed the foregoing Agreement and understand the terms and conditions set forth herein, and further agree to purchase the Subject Property pursuant to said terms and conditions.**

Date: October 16, 2019

*Oscar Mendoza*
Oscar Mendoza                                    , **Buyer**

Date: October 16, 2019

C890CD2CC289498...
Linda Mendoza

*Elizabeth Lara*
Elizabeth Lara                                    , **Buyer**

EXHIBIT "2"

I, Seller, agree to sell the Subject Property pursuant to the terms and conditions set forth herein.

Date:

_____

**Richard A. Marshack**, in her sole capacity as Bankruptcy Trustee for the Estate of **Alain Azoulay** ("Estate") **8:19-bk-11550-TA** and not in her individual capacity or as a member of the **Law Offices of MARSHACK HAYS LLP**

**SO AGREED.**

**Date:** October 16, 2019

DocuSigned by:

*Clarence Yoshikane*
—2100...

**Clarence Yoshikane, Trustee's Agent**
**CA BRE License # 00801398**

**Coldwell Banker Residential Brokerage**
**840 Newport Center Drive, Suite 100**
**Newport Beach, CA 92660**

**714.606.5765, Direct Line**

**Clarence.Yoshikane@gmail.com**

**Date:** October 16, 2019

DocuSigned by:

*Clarence Yoshikane*
—2100116E9F7F922...

Clarence Yoshikane **, Buyer's Agent**

# EXHIBIT 3

# EXHIBIT 3

| American Land Title Association | ALTA Settlement Statement - Cash |
|---|---|
| | Adopted 05-01-2015 |

**Fidelity National Agency Solutions**
**ALTA Universal ID:**
**6500 Pinecrest Drive**
**Suite 600**
**Plano 75024**

File No./Escrow No. :    APS19-72406
Print Date & Time:    November 25, 2019   3:10 pm
Officer/Escrow Officer :
Settlement Location :

Property Address:    327 Salta Verde Point
                    Long Beach, CA 90803
Buyer:              Oscar Mendoza and Linda Mendoza
                    327 Salta Verde Point
                    Long Beach, CA 90803
                    Elizabeth Loera
                    327 Salta Verde Point
                    Long Beach, CA 90803
Seller:             Richard A. Marshack, as Trustee for the Bankruptcy Estate of Alain Azoulay
Lender:             TBD

Settlement Date:    December 27, 2019
Disbursement Date:  December 27, 2019

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Financial** | | |
| | 1,350,000.00 | Sale Price of Property | 1,350,000.00 | |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | 39.52 | December Assessment 12/27/19-12/31/19 | 39.52 | |
| 21,106.66 | | County Taxes 01/01/19 - 12/27/19 | | 21,106.66 |
| | | | | |
| | | **Other Loan Charges** | | |
| 1,200.00 | | Closing Coordination Fee to Bright Line Title, LLC | 1,200.00 | |
| 100.00 | | Doc Prep to Bright Line Title, LLC | 100.00 | |
| | | | | |
| | | **Title Charges and Escrow/Settlement Charges** | | |
| | | Endorsement 8.1 & 9 to Fidelity National Agency Solutions | 25.00 | |
| | | Lender's Title Insurance to Fidelity National Agency Solutions | 550.00 | |

Copyright 2015 American Land Title Association
All rights reserved

EXHIBIT "3"
Page 1 of 3

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Title Charges and Escrow/Settlement Charges (continued)** | | |
| 2,604.00 | | Owner's Title Insurance to Fidelity National Agency Solutions | | |
| | | Tax Research Fee to Fidelity National Agency Solutions | 50.00 | |
| 350.00 | | Title Search & Exam Fee to Fidelity National Agency Solutions | | |
| | | Title Search Update (2) to Fidelity National Agency Solutions | 150.00 | |
| 400.00 | | Lien Search Fee to Fidelity National Agency Solutions | | |
| | | | | |
| | | **Commissions** | | |
| 22,500.00 | | Listing Agent Commission to Coldwell Banker Residentail Brokerage | | |
| 22,500.00 | | Selling Agent Commission to Coldwell Banker Residential Brokerage | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Recording Fees to Los Angeles County | 463.00 | |
| 1,485.00 | | Deed Stamps to Los Angeles County | | |
| 100.00 | | Recording Fee Motion to Sell to Los Angeles County | | |
| | | | | |
| | | **Payoff(s)** | | |
| 1,184,398.86 | | Payoff of First Mortgage Loan to Bank of America | | |
| | | Loan Payoff                                        0.00 | | |
| | | Total Payoff        1,184,398.86 | | |
| | | | | |
| | | **Miscellaneous** | | |
| 67,500.00 | | BK Trustee Liability Insurance to Richard A. Marshack, as Trustee for the Bankruptcy | | |
| 22,500.00 | | BKG Commission to BK Global | | |
| 295.00 | | Closing Fee to Rich Title, Inc. | | |
| 3,000.00 | | HOA Dues/Fees to Spinnaker Bay HOA | | |

| Seller | | | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| 1,350,039.52 | 1,350,039.52 | **Subtotals** | 1,352,577.52 | 21,106.66 |
| | | **Due from Buyer** | | 1,331,470.86 |
| 1,350,039.52 | 1,350,039.52 | **Totals** | 1,352,577.52 | 1,352,577.52 |

Copyright 2015 American Land Title Association
All rights reserved

EXHIBIT "3"
Page 2 of 3

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize Fidelity National Agency Solutions to cause the funds to be disbursed in accordance with this statement.

Buyer

_____
Oscar Mendoza

_____
Linda Mendoza

_____
Elizabeth Loera

Seller

Richard A. Marshack, as Trustee for the Bankruptcy Estate of Alain Azoulay

BY:_____

_____
Settlement Agent

Copyright 2015 American Land Title Association
All rights reserved

EXHIBIT "3"
Page 3 of 3



Bank of America, N.A.
16001 Dallas Parkway
Addison, TX 75001

## Secured Creditor Approval of Sale

Pursuant to the attached Residential Purchase Agreement and Joint Escrow Instructions dated October 16, 2019 (the "Agreement"), regarding the property located at 327 Salta Verde Point, Long Beach, CA 90803 (the "Property"), Bank of America hereby approves the offer to purchase the Property for the amount of $1,350,000, in accordance with the terms set forth in such Agreement.  Further, upon review of the attached settlement statement, Bank of America hereby approves distribution of a carve-out at the closing of the sale of the Property pursuant to the Agreement in the amount of $67,500, or five percent (5%) of the purchase price, to the bankruptcy estate of Alain Azoulay.

If you have any questions or concerns, please call Janice Bergthold at 214.209.5123.

Date: ___11/26/19_____

BANK OF AMERICA, N.A.
By:

_Janice Bu_____

_____

_____

_____

EXHIBIT "3"

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER: (1) APPROVING SALE OF REAL PROPERTY LOCATED AT 327 SALTA VERDE POINT, LONG BEACH, CA 90803; (2) APPROVING SALE FREE AND CLEAR OF LIENS; (3) APPROVING CARVE-OUT AGREEMENT; (4) APPROVING PAYMENT OF AGENTS' COMMISSIONS; (5) FINDING BUYERS ARE GOOD FAITH PURCHASERS; AND (6) WAIVING THE 14-DAY STAY IMPOSED BY FRBP 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD A. MARSHACK AND CLARENCE YOSHIKANE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 26, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Dana M Douglas**    dmddouglas@hotmail.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Edward W Hess**    ed_hess@pacbell.net, fsoriano@pacbell.net
- **Nancy L Lee**    bknotice@mccarthyholthus.com, nlee@ecf.courtdrive.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, rmarshack@iq7technology.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) November 26, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

CLARENCE Yoshikane, 1551 N Tustin Avenue, Suite 850, Santa Ana, CA 92705

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 26, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Theodor C. Albert, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 26, 2019 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY UNITED STATES MAIL**:

| | |
|---|---|
| **Via Certified Mail**:<br>Brian T. Moynihan, CEO<br>Bank of America, N.A.<br>100 N. Tryon Street, Ste. 170<br>Charlotte, NC 28202-4024 | **Via Certified Mail**:<br>Bank of America, N.A.<br>c/o CT Corporation System, Agent for Service<br>818 W. Seventh St., Ste. 930<br>Los Angeles, CA 90017 |

<strong><u>Lienholders</u></strong>

| | |
|---|---|
| Spinnaker Bay Homeowners Association<br>Manju Lal, Managing Agent<br>306 East Bay Drive, Unit B<br>Newport Beach, CA 92661 | Spinnaker Bay Homeowners Association, Inc.<br>c/o The Law Offices of Edward W. Hess, Jr.<br>601 N. Parkcenter Dr., Ste. 107-108<br>Santa Ana, CA 92705 |
| Spinnaker Bay Homeowners Association, Inc.<br>c/o The Law Offices of Edward W. Hess, Jr.<br>550 Parkcenter Dr., Ste. 105<br>Santa Ana, CA 92705 | The Linton Family LLC<br>c/o Francis O'Brian & Sons Publishing Co., Inc.,<br>Registered Agent<br>2050 S. Magic Way, #295<br>Henderson, NV 89002 |
| Paul W. Wylie, Trustee of Urban Coyotes Living<br>Trust Dated July 1, 2001 and Linton Family LLC<br>c/o Richard M. Hoefflin, Esq.<br>Hoefflin Burrows, a Law Corporation<br>2659 Townsgate Rd., Ste. 232<br>Westlake Village, CA 91361-2756 | Linda M. Linton, Manager<br>Steven M. Linton, Manager<br>The Linton Family Trust, LLC<br>c/o Francis O'Brian & Sons Publishing Co., Inc.,<br>Registered Agent<br>2050 S. Magic Way, #295<br>Henderson, NV 89002 |
| Midland Funding LLC<br>Gregory Call, Secretary<br>350 Camino de la Reina, Ste. 300<br>San Diego, CA 92108 | Cach, LLC<br>Resurgent Capital Service<br>PO Box 10587<br>Greenville, SC 29603-0587 |
| | Cach, LLC / Wells Fargo Bank<br>c/o Mandarich Law Group, LLP<br>9200 Oakdale Avenue, Ste. 601<br>Chatsworth, CA 91311-6513 |